Maurice Wahl, J.
The defendant, the proprietor of the La Provencal Restaurant in a building located in Manhattan and also used as a residence by him, was the owner of a valuable collection of postage stamps of Austria, Germany, the German Colonies et al. Upon discovering that the part of the premises where the restaurant was situated had been burglarized and the collection stolen, the defendant authorized the publication of a notice describing the contents of the stamp albums and containing the offer: “A generous reward will be paid for the return of the above stamps,” and requested contact with the offeror. The offer of the reward was nationally circulated through the stamp association of which the plaintiff was not a member, and at the time of the trial the reward remained unrevoked. The value of the stamps according to the pleadings was anywhere between $20,000 and $60,000, and the plaintiff herein seeks to recover the sum of $10,000 claiming that this sum would constitute a generous reward.
*656 The plaintiff having retired to Florida shortly before the events recounted herein, purchased a small stamp business. After the reward offer was published, a person representing himself as the lawful owner, through inheritance from his deceased father, came to plaintiff’s store and offered to sell his stamp collection. Plaintiff relatively inexperienced, after examining same, purchased a part thereof. The next day that seller came in again and offered to sell the balance of the collection. Plaintiff agreed to and did purchase same, but not the loose stamps. The seller cashed the plaintiff’s checks at the hotel in Miami where he resided. A day or so after this purchase, plaintiff spoke to another dealer friend, a member of the national stamp association. The following day the dealer told plaintiff that he had received a circular concerning the reward for return of stamps which had been stolen and alerted plaintiff that perhaps the stamps purchased were the same.
Plaintiff immediately called the local FBI agent in Florida, the defendant in New York and the association’s secretary. The FBI visited the plaintiff and he fully co-operated with them. They trailed the thief and when they located him, they could not arrest him as he asserted true ownership of the property.
The defendant came to plaintiff’s store with the FBI agent and after the property was presumably identified by defendant as his and without legal proof of this fact, the plaintiff turned the stamp albums over to the defendant, without in any way claiming any charges or liens against such property.
Meanwhile plaintiff was compelled by judgment to pay the purchase price evidenced by two checks plus costs totaling $1,123 to the hotel where they had been cashed, as the hotel was a holder in due course. The stop payment order was too late.
Ultimately the thief known as “ Karl Wass ” was apprehended in New York City by the FBI when he endeavored to sell some of the stolen stamps to the very stamp dealer who had helped the defendant Heinrich prepare the reward notice. The thief pled guilty in the Federal court and was sentenced to jail and the stamps belonging to the defendant were returned to him.
After a complete trial both sides rested. Each moved for a directed verdict; consented to the discharge of the jury and to submit to the court the issue whether any reward was due to the plaintiff and, if so, the amount thereof. Such now is the posture of the case.
*657 The court finds as a fact that plaintiff came into possession of the property, after the reward offer was made. Upon discovery that the purchased property was the one in question, plaintiff did everything that an honest, law-abiding citizen was and is required to do. He notified the FBI and the defendant as the presumptive true owner. The court finds that under all these circumstances that at no time could plaintiff under either the Florida or New York penal statutes be charged with a larceny as no secretion or withholding of the property was attempted or made. The evidence fails to show any guilty knowledge on plaintiff’s part; and this court does not accept the intimation of wrongdoing on the part of the plaintiff.
The voluntary relinquishment of the property without legal advice, or assertion of any lien, or resort to litigation is evidence of the good and lawful conduct of the plaintiff in restoring to the presumptive lawful owner his property.
Thus the court finds that an honest citizen, albeit imprudent and foolish, who performs a civic duty and obeys the law, now finds himself out of pocket some $1,100 odd dollars. Simple justice dictates that defendant should not profit at plaintiff’s loss. Nor should defendant, who concedes his reward offer is unrevoked, escape his commitment by fine legal artifice, if indeed it exists. The host of bewildering case law submitted by both sides in their assiduous and laudatory efforts to convince the court has merely reinforced this court to pay homage to justice, which has been noted is “ Truth in Action.”
Yet there is legal authority to justify a recovery for the plaintiff. A unilateral contract binding and valid came into existence when the plaintiff, knowing of the offer of reward, notified the defendant and returned his stamp collection, in short, an act for a promise.
The defendant’s position is that when Greene, the plaintiff, purchased the stamp collection he had no knowledge of the existence of the defendant’s offer of a generous reward. The plaintiff contends, however, that since he performed the act required by the reward offer, namely return of the stamps and that with such knowledge and with the desire to claim the reward, that he thereby completed a unilateral contract, and so became entitled to the generous reward, the amount of which may be determined by this court. 11 An offer for a unilateral contract generally requires an act on the part of the offeree to make a binding contract. This act is consideration for the promise contained in the offer and doing it without more will create a contract.” (Selections from Williston on Contracts, Rev. ed., 65, p. 77.)
*658 The defendant’s legal position seems to be based upon New York law that in order to recover a reward the plaintiff must have been aware of the offer at the time he came into possession of the stamp albums. The defendant’s position would require people to become bounty hunters and most rewards would become illusory.
There is very little dispute as to the value — one side now says $22,000 — the other $26,000. As the parties have stipulated to have this court act as the Judge and jury, the court finds that defendant is under a fair determination obligated to pay plaintiff the sum of $2,400 which represents a median figure of 10% of split difference value of $24,000.
Finally, the ordinary layman understands the word, “ generous ” as used in this reward offer, to carry the meaning ascribed in Webster’s Dictionary, as a “ noble, open-handed, bountiful and liberal ” amount which the court accepts and finds to be what defendant in fact offered. He is bound by his own description of the quantum.
The Clerk is directed to enter judgment for the plaintiff in the amount of $2,400, with interest, thereon.